**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MARK MONDELLO, *et al.*, | CASE NO. 5:22-cv-01238 |
| Plaintiffs, | JUDGE DAVID A. RUIZ |
| v. | |
| POWER HOME SOLAR, LLC, *et al.*, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

This matter is before the Court upon Defendant GoodLeap, LLC's Motion to Dismiss and Compel Arbitration (R. 17), and Defendant Jayson Waller's Motion to Dismiss (R. 28), which both pertain to Plaintiffs' Amended Complaint (R. 16). Also before the Court is Plaintiffs' Motion to Conduct Limited Discovery (R. 24). For the following reasons, the Court GRANTS Defendants' Motions and DENIES Plaintiffs' Motion.

**I. Facts**

In 2020, Plaintiffs Mark and Tracy Mondello were considering a solar powered energy system for their home. (R. 16, PageID# 262–263 ¶¶ 1, 9). Plaintiffs made an appointment with a representative from Defendant Power Home Solar, LLC, doing business as Pink Energy (Pink

Energy), which was a Delaware limited liability company licensed to do business in Ohio, that sold and installed solar power systems for residential use. (*Id.* ¶¶ 2, 9). Plaintiffs were apparently aware of Defendant Pink Energy due to its marketing efforts indicating the "quality and efficiency" of its energy saving products—representations Plaintiffs now allege to be false. (*Id.*, PageID# 263 ¶10).

On or about February 11, 2020, an employee of Defendant Pink Energy met Plaintiffs at their residence to discuss a potential sale. (*Id.*, PageID# 264–265 ¶¶ 13–14). Plaintiffs allege that during this meeting, Defendant Pink Energy's employee made several representations about Defendant's solar panel systems consistent with its public advertisements, including that the solar panels' installation would lead to a "significant reduction" in Plaintiffs' electrical bills and that Plaintiffs would receive additional financial benefits via federal and/or state tax credits. (*Id.* ¶ 14). Plaintiffs claim that during this sales meeting, the employee engaged in "hard-sell sales tactics," by *inter alia*, misleading them as to the "efficiency and efficacy of the solar panels" and making false promises regarding federal tax credits. (*Id.*, PageID# 266, 269 ¶¶ 21, 38). According to Plaintiff, these sales tactics were developed and implemented by Defendant Jayson Waller, Pink Energy's founder and Chief Executive Officer, and a resident of North Carolina during the relevant period. (*Id.*, PageID# 262, 266–269 ¶¶ 5, 21–38).

Ultimately, Plaintiffs electronically signed the Solar Energy System Purchase & Installation Agreement (the Sales Agreement) with Defendant Pink Energy for the sale and installation of a solar powered system in their home. (R. 16-1; R. 16, PageID# 270 ¶ 44). After completing the Sales Agreement, Pink Energy's employee produced—and Plaintiffs electronically signed—a financing agreement (the Loan Agreement) with Defendant GoodLeap, LLC, a California limited liability company that provides financing to customers who purchase

2

Pink Energy's solar panel systems. (R. 16-2; R. 16, PageID# 262, 270 ¶¶ 3, 45, 48).

In April 2020, Defendant Pink Energy installed Plaintiffs' solar panel system. (R. 16, PageID# 271 ¶ 56). Plaintiffs allege that the system was not properly installed, and that the system has not performed as Defendant Pink Energy represented—namely, it has not reduced Plaintiffs' electrical bills as much as they expected or provided the cost savings promised by Defendant Pink Energy. (*Id.*, PageID# 273–274 ¶¶ 66–73). Despite alerting Defendants to these issues, Defendants have not fixed the problems with Plaintiffs' solar power system. (*Id.*, PageID# 274 ¶ 74).

## II. Procedure

On July 14, 2022, Plaintiffs filed a Complaint making several claims against Defendants Pink Energy, GoodLeap, and Waller (collectively, Defendants). (R. 1). Plaintiffs filed an Amended Complaint on October 21, 2022. (R. 16).

Plaintiffs allege claims against Defendant Pink Energy for breach of contract, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, negligent selection and training, breach of warranty, violation of the Ohio Consumer Protection Act, civil conspiracy, and negligence, all related to the alleged improper installation and underperformance of Plaintiffs' solar power system. (*Id.*, PageID# 274–289 ¶¶ 76–187). Plaintiffs bring these same claims against Defendant GoodLeap, purportedly under a provision in the Loan Agreement that "subject[s] [GoodLeap] to the same claims and defenses asserted against Defendant Pink Energy." (*See, e.g.*, *id.*, PageID# 275 ¶ 82). The Amended Complaint also raises claims against Defendant Waller—fraudulent inducement, negligent selection and training, civil conspiracy, and negligence—related to his alleged development and implementation of the "hard-sell tactics" used by Defendant Pink Energy's employees. (*Id.*, PageID# 266, 278, 282–283, 285–287 ¶¶ 21,

3

104–111, 136–142, 158–175). The Amended Complaint requests the following declaratory judgment findings: that (i) Plaintiffs never agreed to arbitrate their claims against Defendant Pink Energy through the Sales Agreement; (ii) Plaintiffs never agreed to arbitrate their claims against Defendant GoodLeap through the Loan Agreement; and (iii) Defendant Waller is personally liable for any and all damages associated with his control over Defendant Pink Energy's fraudulent sales and marketing practices. (*Id.*, PageID# 279– 282, 287–288 ¶¶ 112–135, 176–182). Finally, the Amended Complaint seeks punitive damages from Defendants. (*Id.*, PageID# 288–289 ¶¶ 183–187).

In November 2022, Defendant GoodLeap filed a Motion to Dismiss the Amended Complaint and Compel Arbitration (R. 17) and Defendant Waller filed a Motion to Dismiss the Amended Complaint (R. 28), which have both been fully briefed (R. 18; R. 27; R. 33; R. 35). Plaintiff filed a corresponding Motion to Conduct Limited Discovery (R. 24), regarding the enforceability of the arbitration provisions in the Loan Agreement; this Motion has also been fully briefed (R. 31; R. 32).

Separately, on October 13, 2022, Defendant Pink Energy filed a notice indicating that it had filed for bankruptcy in the United States Bankruptcy Court for the Western District of North Carolina. (R. 23). Accordingly, the Court stayed the matter as to Defendant Pink Energy on November 14, 2022. (*Id.*).

Following a Case Management Conference with the parties on March 22, 2023, the Court stayed the remainder of the proceedings pending the Court's ruling on the aforementioned Motions. (R. 41).

The Court is aware of nine actions pending before Chief Judge Marbley in the Southern District of Ohio, in which different sets of individual Plaintiffs filed nearly identical claims

against Defendants Pink Energy, GoodLeap, and Waller. (R. 42-1); *Hutzell v. Power Home Solar, LLC*, 2023 WL 4932068 (S.D. Ohio Aug. 2, 2023). On August 4, 2023, Defendant GoodLeap filed a notice informing the Court that Judge Marbley—who had consolidated these actions—compelled the arbitration of the plaintiffs' parallel claims as to Defendant GoodLeap, ordered their dismissal, and denied the plaintiffs' parallel motions for limited discovery. (R. 42). Defendant Waller filed a subsequent response further notifying the Court that Judge Marbley dismissed Defendant Waller from those consolidated actions in the Southern District of Ohio. (R. 43).

### III. Standards of Review

A. Motion to Dismiss

When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint and construe the complaint in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, L.Ed.2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570,

> 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

### B. Motion to Compel Arbitration

In determining whether to grant a motion to dismiss or stay proceedings and compel arbitration, the Court must consider four factors:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.* 394 F.3d 444, 451 (6th Cir. 2005) (*quoting Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)); *see also Patnik v. Citicorp Bank Tr. FSB*, 412 F. Supp. 2d 753, 758 (N.D. Ohio 2005) (*citing Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)).

### IV. Discussion

### A. Defendant GoodLeap's Motion to Dismiss and Compel Arbitration

In its Motion to Dismiss and Compel Arbitration, Defendant GoodLeap argues that the arbitration provisions in the Loan Agreement compel the arbitration of all Plaintiffs' claims against GoodLeap. (R. 17-1, PageID# 328). As relevant, the arbitration clause provides:

6

> All claims and disputes arising out of or relating to [the Loan Agreement] (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION. . . .
>
> The Federal Arbitration Act (9 U.S.C. §§ 1–16) (the "FAA") shall govern this agreement to arbitrate including all arbitrability issues. No state law respecting arbitrability issues shall govern this agreement to arbitrate. Subject to and without limiting the foregoing, federal law shall apply to all other issues that arise under federal law and applicable state law as set forth in Section 14 above shall apply to all other issues that arise under state law (without reference to a state's choice of law rules). YOU MAY OPT OUT OF ARBITRATION BY SENDING US WRITTEN NOTICE WITHIN 15 DAYS OF SIGNING THE AGREEMENT STATING THAT YOU WISH TO "OPT OUT OF THE AGREEMENT TO ARBITRATE DISPUTES."

(R. 16-2, PageID# 315–316).

Federal law strongly favors the enforcement of valid arbitration clauses for dispute resolution. The primary substantive provision of the Federal Arbitration Act (FAA) reflects "both a 'liberal federal policy favoring arbitration,' *Moses H. Cone* [*Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)], and the 'fundamental principle that arbitration is a matter of contract,' *Rent-A-Center, West, Inc. v. Jackson*, [561 U.S. 63, 67] (2010)." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As a matter of contract law, then, the Act "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985)); *see also AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute

7

which he has not agreed so to submit."); *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774, 778 (N.D. Ohio 2003).

The Supreme Court has instructed that, when deciding whether the parties agreed to arbitrate a matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Ohio Supreme Court has described the principles to be applied when considering the applicability of an arbitration clause, as follows:

> In *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the United States Supreme Court summarized four general principles, developed in prior decisions of that court, to be applied when considering the reach of an arbitration clause. The essence of these general principles, set out primarily in the "*Steelworkers* Trilogy" (*Steelworkers v. Am. Mfg. Co.* [1960], 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf Navigation Co.* [1960], 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Steelworkers v. Enterprise Wheel & Car Corp.* [1960], 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424) is pertinent to our review, and provides a framework for our inquiry.
>
> The first principle is that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *AT&T Technologies*, 475 U.S. at 648-649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting *Warrior & Gulf, supra*, 363 U.S. at 582, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.
>
> The second principle is that "the question of arbitrability – whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.
>
> The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

> The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra*, 363 U.S. at 582-588, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.

*Council of Smaller Enters. v. Gates, McDonald & Co.*, 687 N.E.2d 1352, 1355–56 (Ohio 1998) (footnote omitted).

In examining a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-HAUL Co. of Mass. & Ohio, Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (*quoting Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

As an initial matter, the Supreme Court has recognized that parties can agree to arbitrate "gateway" questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy, as long as there is "clear and unmistakable" evidence that they have agreed to do so. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 & n.1 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Such a provision is called a delegation clause. *See Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021).

There is no dispute that the Loan Agreement contains a delegation clause and that this clause covers all of Plaintiffs' instant claims against Defendant GoodLeap because these claims "aris[e] out of or relat[e]" to the Loan Agreement. (R. 16-2, PageID# 315–316 ("The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration

9

including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues)."); R. 18, PageID# 385–386); *see also Hutzell*, 2023 WL 4932068, at *9–10. Rather, Plaintiffs raise several arguments regarding the procedural unconscionability of the Loan Agreement as a whole: (i) Plaintiffs' signature, which was only inputted into the electronic document once, was "auto-filled" throughout the document; (ii) the allegedly rapid pace by which the Pink Energy employee summarized the Loan Agreement; (iii) the Pink Energy employee's alleged failure to mention the arbitration clause; and (iv) the pressure Plaintiffs felt to agree to the Loan Agreement in order to receive certain credits and discounts. (R. 18, PageID# 381–382). Plaintiffs also contend that the provisions of the arbitration clause are substantively unconscionable because of its fee-shifting provision, prohibition of class actions, and restriction of discovery. (*Id.*, PageID# 383–385). As to the delegation clause itself, Plaintiffs contend that it should be void for the same reasons the arbitration clause as a whole is unconscionable—namely, because Plaintiffs were unaware of the clause due to Pink Energy's hard-sell sales tactics. (*Id.*, PageID# 385–387).

The applicable caselaw severely undercuts Plaintiffs' position. The Supreme Court and Sixth Circuit have clearly established that "[o]nly a *specific challenge* to a delegation clause brings arbitrability issues back within the court's province." *Swiger*, 989 F.3d at 505 (emphasis added) (*citing Rent-A-Center*, 561 U.S. at 72). While a party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement, "merely challenging the entire agreement will not suffice," nor will "simply recycl[ing] the same arguments that pertain to the enforceability of the agreement as a whole." *Id.* at 506 (*citing Rent-A-Center*, 561 U.S. at 74); *Becker v. Delek*

*US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (*quoting In re StockX Sec. Breach Litig.*, 19 F.4th 873, 886 (6th Cir. 2021)). In other words, where a party merely challenges the entire contract or arbitration clause generally—not the delegation clause specifically—the question of the agreement's validity is reserved for the arbitrator, not the Court. *See Hutzell*, 2023 WL 4932068, at *9–11.

Accordingly, courts in the Sixth Circuit have compelled arbitration in cases where a party merely alleges that a contract as a whole is invalid. In these cases, the Sixth Circuit has held that such an argument is a general challenge to the contract, not specifically to the delegation clause. *See* Becker, 39 F.4th at 356 (holding that a plaintiff's challenge to a delegation clause was insufficient where the challenge was made "on the same grounds" as his challenge to the arbitration agreement in general).

In this case, Plaintiffs challenge the Loan Agreement and arbitration clause generally, not the delegation clause specifically. None of Plaintiffs' arguments related to the purported procedural unconscionability of the Loan Agreement—namely, Pink Energy's "hard-sell sales tactics"—are specific challenges to the delegation clause. The same is true of Plaintiffs' arguments about the substantive unconscionability of the terms of the arbitration clause, as none of these arguments challenge the substance of the delegation clause itself. Accordingly, the Court must compel arbitration on the gateway question of arbitrability. *Hutzell*, 2023 WL 4932068, at *8–11.

The only remaining issue is whether the Court should dismiss this case, as Defendant GoodLeap requests, or enter a stay of the action after it compels arbitration. When all claims fall under the scope of an arbitration agreement, courts are to dismiss the action without prejudice, so the Court has no role in the action other than to enforce an

11

arbitration award. *Orcutt v. Keterring Radiologists, Inc.*, 199 F. Supp. 2d 746, 757 (S.D. Ohio 2002). Here, the delegation clause assigns to the arbitrator all questions concerning the enforceability and scope of the arbitration provision, as well as the jurisdiction to decide the merits of the related dispute against Defendant GoodLeap. *See Hutzell*, 2023 WL 4932068, at *10. Accordingly, it is appropriate for the Court to dismiss, rather than stay, all of Plaintiffs' claims as to Defendant GoodLeap. *See Carey v. Uber Techs., Inc.*, 2017 WL 1133936, at *9 (N.D. Ohio Mar. 27, 2017). For this reason, Defendant GoodLeap's Motion to Dismiss and Compel Arbitration is granted, and Plaintiffs' Motion to Conduct Limited Discovery is denied as moot.

### B. Defendant Waller's Motion to Dismiss

In his Motion to Dismiss, Defendant Waller argues that (i) Plaintiffs fail to allege sufficient facts to state a claim against him and (ii) that he may not be held individually liable for Plaintiffs' allegations against Defendant Pink Energy. (R. 28-1, PageID# 467, 471).

Under Ohio law, a corporate officer "will not be held liable for the debts or acts of the corporate entity," subject to two exceptions. *State ex rel. DeWine v. Osborne Co.*, 104 N.E.3d 843, 856–857 (Ohio Ct. App. 2018). The first exception is where "upon piercing the corporate veil," it appears that "a corporation is simply the 'alter ego' of the individual sought to be held liable." *Id.* (*quoting Mohme v. Deaton*, 2006 WL 3833923, at *1 (Ohio Ct. App. Dec. 28, 2006)). The second, known as the "personal participation" theory, is that a corporate officer may be held personally liable for "tortious acts he or she has [personally] committed." *Id.* at 857.

As to the first exception, under Ohio law:

12

> [T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993). The first element is a restatement of the alter ego doctrine, which requires that a plaintiff "show that the individual and the corporation are fundamentally indistinguishable." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (*quoting Belvedere*, 617 N.E.2d at 1086). In determining whether the company is an alter ego of the individual, Ohio courts consider such factors as:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Id.* (*quoting LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991)).

Alternatively, for the personal participation theory, a plaintiff need not pierce the corporate veil to hold individuals personally liable for their tortious acts. *Hutzell*, 2023 WL 4932068, at *6 (*citing DeWine*, 104 N.E.3d at 857). However, a corporate officer "may not be held liable merely by virtue of his status as a corporate officer." *Id.* (internal quotation marks omitted) (*quoting DeWine*, 104 N.E.3d at 857).

Plaintiffs fail to state a claim against Defendant Waller under either the alter ego doctrine or personal participation theory. The allegations in the Amended Complaint

pertaining specifically to Defendant Waller amount to the following: Defendant Waller "directed and trained" Pink Energy's employees to "engage in hard-sell sales tactics," which included making misrepresentations to potential customers. (R. 16, PageID# 266 ¶ 21). Defendant Waller was "intimately involved in designing, implementing, and teaching the fraudulent sales practices" by routinely attending Pink Energy's sales meetings and maintaining hands-on control of the day-to-day activities of the business. (*Id.*, PageID# 266–267 ¶¶ 22–25). Defendant Waller published a book describing these purportedly fraudulent sales techniques and noting his active role in the leadership of Pink Energy. (*Id.*, PageID# 267 ¶¶ 26–27). And during Defendant Waller's time working for another company—ISI Alarms, Inc.—that company was subject to state enforcement actions related to deceptive sales techniques. (*Id.*, PageID# 268 ¶¶ 29–35).

The alter ego doctrine does not apply here, primarily because there is no indication in Plaintiffs' Amended Complaint that Defendant Waller exercised the requisite "domination and control" over Pink Energy. *Belvedere*, 617 N.E.2d at 1086; *Hutzell*, 2023 WL 4932068, at *7. Although Plaintiffs allege that Defendant Waller "maintained hands-on control of the day-to-day activities of the business" (R. 16, PageID# 278 ¶ 108), Plaintiffs make no allegations otherwise indicating that Defendant Waller "exercised complete or near-complete dominion over the company to the extent that it lacked any effective autonomy" or pertaining to any of the factors Ohio courts consider when deciding whether the alter ego doctrine applies. *Hutzell*, 2023 WL 4932068, at *7; *Taylor Steel*, 417 F.3d at 605. In short, there are no allegations that Pink Energy is indistinguishable from Defendant Waller himself, so Plaintiffs' Amended Complaint and briefing provide an insufficient basis to proceed under the alter ego

doctrine.

The personal participation theory also fails because Plaintiffs do not allege that Defendant Waller engaged in any tortious conduct related to this case. *See State ex rel. Yost v. Leonard*, 2021 WL 840973, at *3 (Ohio Ct. App. Mar. 3, 2021). Plaintiffs' allegations against Defendant Waller pertain to his level of influence over Pink Energy's day-to-day operations and tactics; none of them suggest that Defendant Waller interacted with Plaintiffs during the sale of the solar power system, or even that Defendant Waller directed the Pink Energy employee who made the sale to use those hard-sell sales tactics during his meeting with Plaintiffs. And any allegations of illicit sales techniques used at Defendant Waller's previous company are not relevant to the consideration of his personal involvement in this case. As Judge Marbley found in *Hutzell*, "[e]ven if Defendant Waller routinely pushed for the company's sales representatives to engage in hard-sell tactics, Plaintiffs make no allegation that he pushed for them to sell the defective systems at issue in this case or even knew about the alleged misdeeds giving rise to their injuries." *Hutzell*, 2023 WL 4932068, at *8 (internal quotation marks omitted).

Finally, although Plaintiffs allege that Defendant Waller was involved in a civil conspiracy with Defendants Pink Energy and GoodLeap, Ohio courts have held that "when all the alleged coconspirators are members of the same corporate entity, there are not two separate 'people' to form a conspiracy." *Hawes v. Downing Health Techs. L.L.C.*, 2022 WL 1573737, at *10 (Ohio Ct. App. May 19, 2022). Since Defendant Waller is or was a member of Pink Energy, he could not have conspired with it; and Plaintiffs allege no facts that Defendant Waller personally conspired with Defendant GoodLeap.

15

Accordingly, Plaintiffs' conspiracy claim also fails. *Hutzell*, 2023 WL 4932068, at *8.

Because Plaintiffs fail to make any allegations against Defendant Waller giving rise to liability, Defendant Waller's Motion to Dismiss is hereby granted. Defendant Waller is hereby dismissed from this action.

### V. Conclusion

Defendant GoodLeap's Motion to Dismiss and Compel Arbitration (R. 17) is GRANTED. Defendant Waller's Motion to Dismiss (R. 28) is GRANTED. Plaintiffs' Motion to Conduct Limited Discovery (R. 24) is DENIED as moot. Defendants GoodLeap and Waller are hereby DISMISSED from this action.[1]

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 28, 2023

---

[1] The only remaining Defendant in this action is Pink Energy. The stay that the Court implemented due to Defendant Pink Energy's bankruptcy remains in place, and Defendant has not filed an operative response to the Amended Complaint as of the date of this Order.

16